# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

                Plaintiff,

v.

Anthony Lee Prellwitz,

                Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 06-287 ADM/RLE
Civil No. 10-00330 ADM

_____

Anthony Lee Prellwitz, pro se.

Leeann K. Bell, Esq., Assistant United States Attorney, Minneapolis, MN, for Plaintiff.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendant Anthony Lee Prellwitz's ("Prellwitz") Motion to Vacate, Set Aside or Correct a Sentence Pursuant to 28 U.S.C. § 2255 [Docket No. 114] ("2255 Motion"). For the reasons set forth herein, Prellwitz's Motion is denied.

## II. BACKGROUND

On September 7, 2006, an Indictment [Docket No. 1] was issued charging Prellwitz with (1) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(e); and (2) possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), 5871.

Prellwitz's trial counsel, Craig Hunter ("Hunter"), filed several pretrial motions: a motion for a competency evaluation [Docket No. 15], dismissal for selective prosecution [Docket No. 16], dismissal for Speedy Trial violations [Docket No. 19], and motions to suppress statements and evidence [Dockets No. 18]. Prellwitz also moved to continue the pretrial motions

hearing [Docket No. 13] until October 24, 2006, and Magistrate Judge Raymond Erickson granted this request [Docket No. 23].  After Prellwitz was deemed competent to stand trial, a hearing was scheduled for February 13, 2007, and continued until February 21, 2007, at counsel's request.  Prior to the hearing, Prellwitz filed additional motions to dismiss for violations of the Bail Reform Act [Docket No. 33] and defective grand jury proceedings [Docket No. 34] and a motion to change the trial venue to Fergus Falls [Docket No. 35].  Judge Erickson issued a Report and Recommendation ("R&R") denying all of Prellwitz's motions and reserving the decision on Prellwitz's change of trial venue for this Court [Docket No. 42].  By Order dated March 23, 2007, the Court adopted Judge Erickson's R&R in its entirety and ordered the trial be conducted in Minneapolis [Docket No. 47] beginning April 2, 2007.

On April 2, after the jury had been selected, Prellwitz asked to proceed pro se, and Hunter asked to withdraw as Prellwitz's counsel, citing his inability to communicate rationally with Prellwitz.  Partial Trial Transcript [Docket No. 120] at 8-13.  The Court asked Prellwitz whether he was certain he wanted to proceed pro se, and he clearly stated he did not want to be represented by Hunter and would prefer another attorney.  Id. at 31-32.  The Court recessed to consider Prellwitz's options regarding proceeding pro se or appointing a new federal public defender.  Id. at 35-36.  After returning from the recess, the Court asked Prellwitz to clarify his reasons for his dissatisfaction with Hunter.  Id. at 38.  Prellwitz responded that he was dissatisfied because Hunter sought continuances and failed to raise issues of selective prosecution, Fourth Amendment violations, and Sixth Amendment violations.  Id. at 39-45.  The Court permitted Hunter to respond to Prellwitz's claims and then took another recess.  Id. at 47-51, 59.

After the recess, the Court explained that it had reviewed Prellwitz's claims regarding Hunter's representation and was not convinced that Prellwitz's dissatisfaction was justified. Id. at 60-61. Nevertheless, the Court asked the Chief Public Defender, Katherian Roe ("Roe"), to meet with Prellwitz regarding his concerns. Id. at 62-63. After meeting with Prellwitz, Roe requested additional time to confer with Prellwitz. Id. at 64. The Court granted Roe's request and recessed until the next morning. Id. at 65.

At a hearing the following day, the Court relieved Hunter of his responsibilities. Change of Plea Tr. at 3-4. Prellwitz, now represented by Roe, proceeded to plead guilty to the charges in the indictment. Id. at 4-5. The Court placed Prellwitz under oath, informed him that he could stop the proceedings and speak with Roe in private at any time during the hearing, and assessed whether Prellwitz's decision to plead guilty appeared to be knowing, voluntary, and intelligent. Id. at 4-11. 3. The Court inquired:

> The Court: Have you had enough time to talk to your counsel, Ms. Roe, about your guilty plea?
>
> [Prellwitz]: Yes.
>
> The Court: Are you satisfied with her representation of you?
>
> [Prellwitz]: Yes.
>
> The Court: Now, you've had some issues with regard to representation in the past and I just want to make sure that you feel that you are adequately represented by counsel at this time.
>
> [Prellwitz]: Yes.
>
> . . . .
>
> The Court: Paragraph 8 [of the Plea Agreement] talks about the waiver of the trial. Once I accept your plea agreement in a few minutes, I'll be discharging the jury, and that means that you'd be

> waiving all rights you have to trial or appeal on any question relating to whether or not you're guilty of this offense. And it says you waive the right to bring any further pretrial motions or challenge the rulings on any pretrial motions, including the items we talked about yesterday, suppression of evidence, probable cause relating to your arrest, speedy trial, selective prosecution, defective grand jury proceedings or any other motions. This is the end of that, so the issues in the future would all just related to issues regarding what your sentence is. Do you understand that?
>
> [Prellwitz]: Yes.
>
> The Court: And that's what you want to do under these circumstances?
>
> [Prellwitz]: Yes.
>
> The Court: Okay. You've had time to reflect and think about that, because that's a change from where we were yesterday, correct?
>
> [Prellwitz]: Yes.

Id. at 18-19.

During the hearing, the prosecution questioned Prellwitz. Prellwitz admitted that he had been previously convicted of five felonies. Id. at 23-24. Prellwitz admitted that at the time of his arrest on August 3, 2006, three firearms were in his car, one of which had a barrel less than eighteen inches in length and was unregistered. Id. at 24-25.

Before adjourning, the Court again inquired:

> The Court: All right. Mr. Prellwitz, this is going to be final when you step down. I'm not going to let you withdraw your guilty plea after today. There's been a lot of process going up there and I've got the jury waiting that we had come in today and I'm going to be releasing them, so I just want to make doubly, triply, quadruply sure that this is what you want to do under the circumstances.
>
> [Prellwitz]: Yes.

4

> The Court: Okay. Any doubt in your mind about that?
>
> [Prellwitz]: No.
>
> The Court: You are in fact guilty of both of these offenses, correct?
>
> [Prellwitz]: Yes.
>
> The Court: I mean, you've had your issues about the process and how it's worked, but bottom line, you've never really contested the fact that you had those - - I mean, I think right away that night you told the police officers that you had those guns and that one of them was sawed off, correct?
>
> [Prellwitz]: Yes.

Id. at 27.

At Prellwitz's sentencing on August 8, 2007, the parties mutually agreed to amend the plea to reflect the particular firearm in Count 1. Sentencing Tr. at 2-3. Although the parties agreed that another plea colloquy was unnecessary, because of Prellwitz's numerous letters to the Court and Roe's statement that Prellwitz had begun taking a new medication which she believed to be beneficial for Prellwitz's state of mind, the Court placed Prellwitz under oath and again inquired of him:

> The Court: Mr. Prellwitz, as Ms. Roe mentioned, you're on some new medications and I want to make sure that they aren't interfering with your ability to understand today's proceedings. Are they, do you think?
>
> [Prellwitz]: No, they're not.
>
> The Court: You do understand what's happening today?
>
> [Prellwitz]: Yes.
>
> The Court: You've been on the meds, as I understand it now, for a couple of weeks?

5

>   [Prellwitz]: Yes.
>
>   The Court: And I know that sometimes when one starts on a new med, it buzzes you or makes things, I don't know, seem a little out of balance. Have you been on it long enough so you feel you're stable on your meds?
>
>   [Prellwitz]: Yes.
>
>   The Court: Okay. This is complicated stuff for anyone, and particularly, there's a lot of points and numbers. Is there anything - - and we're going to talk about the guidelines, but in terms of your constitutional rights, is there anything that it would be helpful for me to go back over or explain to you?
>
>   [Prellwitz]: No.
>
>   The Court: You still want to plead guilty, you don't want a trial?
>
>   [Prellwitz]: Yes.
>
>   The Court: And you know all of the rights that you would have at trial could be made available to you, but you've decided to plead guilty instead, is that true?
>
>   [Prellwitz]: Yes.
>
>   The Court: And you are in fact guilty of this?
>
>   [Prellwitz]: Yes.

Id. at 8-9. The Court sentenced Prellwitz to 180 months' imprisonment and a supervised release term of five years and ordered a $200 special assessment. Id. at 16.

On August 13, 2007, Prellwitz's appellate counsel, Assistant Federal Defender Katherine Menendez, timely filed a notice of appeal challenging one of the underlying convictions used to establish Prellwitz as an Armed Career Criminal under 18 U.S.C. § 924(e). See United States v. Prellwtiz, 313 F. App'x 916, 2008 WL 4951136, at *1 (8th Cir. Nov. 21, 2008) (per curiam) (unpublished). Prellwitz argued that under the Eighth Circuit's ruling in

United States v. Williams, his three prior convictions for motor vehicle theft did not constitute violent felonies as is required to be deemed an armed career criminal. 537 F.3d 969, 971-76 (8th Cir. 2008) (holding that auto theft without consent is not a crime of violence for purposes of the Sentencing Guidelines). Prellwitz, 313 F. App'x at 16. The government conceded that Williams controlled, and the Eighth Circuit remanded the case for resentencing. Id. On May 21, 2009, the Court resentenced Prellwitz to 120 months' imprisonment. Am. Judgment [Docket No. 99].

Prellwitz again appealed, this time appearing pro se, challenging the Court's ruling on the alleged Speedy Trial Act violations, arguing ineffective assistance of counsel by Hunter and Menendez, and claiming that the multiple recesses taken by the Court at Prellwitz's April 2, 2007 hearing prejudiced Prellwitz. Notice of Appeal [Docket No. 102] at 1-2. The Eighth Circuit dismissed Prellwitz's second appeal. See United States v. Prellwitz, No. 09-2475, Judgment (August 26, 2009).

On February 5, 2010, Prellwitz filed the current 2255 Motion claiming: (1) he was coerced to plead guilty; (2) ineffective assistance of counsel; (3) violations of the Speedy Trial Act; and (4) disparate treatment because of his financial status.[1] 2255 Motion.

### III. DISCUSSION

**A. Standard of Review**

28 U.S.C. § 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence. See United States v. Addonizio, 442 U.S. 178, 184-85 (1979). A prisoner is entitled to an

---

[1] Prellwitz also claims that the failure to provide him with a court transcript of the April 2, 2007 hearing violated his rights. The government responds that it has sent Prellwitz a copy of the transcript and, therefore, Prellwitz's complaint is moot.

7

evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  A hearing is unnecessary if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).

**B.  Prellwitz's Claim is Procedurally Barred**

A defendant's failure to raise an issue on direct appeal constitutes a procedural default barring him from raising it for the first time in a § 2255 motion.  Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997).  A defendant may, however, overcome procedural default if he can show both (1) a cause that excuses the default and (2) actual prejudice from the alleged errors.[2]  Id.

Although Prellwitz twice appealed, neither appeal included a claim that he was coerced to plead guilty.  Prellwitz's claim of an involuntary plea was available to him at the time he filed his appeals, yet he offers no explanation for his failure to raise this issue on direct appeal; thus he cannot satisfy the cause prong of the Matthews test.  United States v. Frady, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal.").  However, Prellwitz can overcome the procedural default if he is able to demonstrate counsel was ineffective for failing to raise that issue.  United States v. Apfel, 97

---

[2] A defendant's procedural default may also be excused by showing actual innocence. Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004).  To prove actual innocence, a defendant must show that, given all the evidence, "it is more likely than not that no reasonable juror would have convicted him."  Schlup v. Delo, 513 U.S. 298, 327-28 (1995).  Here, Prellwitz does not claim to be actually innocent of the crime to which he pleaded guilty.

8

F.3d 1074, 1076 (8th Cir. 1996) ("[A] showing of ineffective assistance of counsel satisfies both cause and prejudice.").

C. **Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Courts employ a strong presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. If a defendant fails to establish prejudice as required by the second part of the Strickland test, a court need not address whether the attorney's representation was objectively reasonable. Apfel, 97 F.3d at 1076. Prellwitz argues that Hunter was ineffective for recommending that he plead guilty and that Menendez was ineffective because she did not represent him on his second appeal.

1. **Hunter**

The Court first addresses whether Hunter's performance was ineffective. With respect to the first prong of the ineffective assistance of counsel analysis, the Court finds that Hunter's performance was not deficient and that it fully satisfied the objective standard of reasonable competence. Hunter independently reviewed the discovery in the case and concluded that the evidence, including the admissibility of Prellwitz's prior felonies, his confession to law enforcement, and his knowing and voluntary taking of a weapon into his possession, purchasing ammunition for it, and being found in possession of the weapon and ammunition, was overwhelming evidence that Prellwitz was guilty of being a felon in possession of a firearm.

9

Hunter's opinion that, based on all the evidence, a jury was virtually certain to convict Prellwitz was well within the realm of professional reasonableness. Roe concurred with Hunter's opinion, and Prellwitz subsequently pleaded guilty. Prellwitz has failed to overcome the "strong presumption that [Hunter's] conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Second, even if Hunter's performance fell below the objective standard of reasonable competence, Prellwitz fails to demonstrate a reasonable probability that but for Hunter's recommendation, he would not have pleaded guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). At the plea colloquy, after Roe was appointed, Prellwitz stated under oath that he had been provided enough time to speak with Roe and was satisfied with her representation. Change of Plea Tr. at 7. The Court itself asked Prellwitz whether he understood the rights, including his right to a trial, that he was giving up by pleading guilty. Id. at 5-23. Prellwitz acknowledged these warnings and still admitted to the crimes alleged and pleaded guilty.

Based on the record, and particularly Prellwitz's testimony at the plea hearing, it is clear that Prellwitz was fully informed and aware of his plea agreement and the consequences of pleading guilty. Accordingly, Prellwitz fails to show that, but for Hunter's alleged errors, Prellwitz would not have pleaded guilty and would have demanded a jury trial. Hunter's performance was reasonable, and Prellwitz was not prejudiced by counsel's acts.

### 2. Menendez

Turning to Prellwitz's claim that Menendez also was ineffective because she did not represent Prellwitz on appeal after re-sentencing, it should first be recognized that Menendez

represented Prellwitz on his first appeal and successfully challenged one of the underlying convictions used to establish Prellwitz's status as an armed career criminal, thereby reducing his sentence from 180 to 120 months. Prellwitz's second appeal merely recycled arguments which had been previously rejected by the Court; therefore, Prellwitz has not identified any issues counsel could have assisted him to raise on appeal. Nor has Prellwitz demonstrated a reasonable probability that the result of his second appeal would have differed had he been represented by counsel. See United States v. Brown, 528 F.3d 1030, 1033-34 (8th Cir. 2008); Garrett v. United States, 78 F.3d 1296, 1306 (8th Cir. 1996). Accordingly, the Court rejects this claim.

**D. Speedy Trial Violations**

The Court does not reach the merits of Prellwitz's argument that the government violated the Speedy Trial Act because Prellwitz waived the right to appeal the denial of his motion to dismiss for alleged violations of the Speedy Trial Act. Prellwitz did not enter a conditional guilty plea reserving the right to appeal the denial of his motion to dismiss. "It is well established in this Circuit that a defendant who pleads guilty waives all nonjurisdictional defenses." United States v. Steward, 972 F.2d 216, 217 (8th Cir. 1992); see also Cox v. Lockhart, 970 F.2d 448, 453 (8th Cir. 1992) (agreeing with the Eleventh and Fifth Circuits and holding that a defendant's rights to a speedy trial are nonjurisdictional in nature and, therefore, foreclosed by a guilty plea). It is clear from the record that before Prellwitz entered his plea, the Court advised him that his plea would result in a waiver of his right to appeal the denial of his motion to dismiss. Change of Plea Tr. at 18-19. Thus, by pleading guilty without preserving the right to challenge the Court's rulings on the alleged Speedy Trial Act violations, Prellwitz forfeited his right to appeal.

Prellwitz next appears to argue that the multiple recesses taken by the Court to consider Prellwitz's options regarding his dissatisfaction with Hunter, his initial request to proceed pro se, and his later request to have new counsel appointed somehow violates the Speedy Trial Act. Prellwitz cites no authority in support of his argument, and the Court is aware of none. Accordingly, the Court declines to grant Prellwitz relief on this claim.

**E. Disparate Treatment**

Prellwitz's final argument is that he was sentenced to the statutory maximum sentence because he could not pay the requisite fine. The guidelines range for a defendant with a criminal history category of IV with 28 prior criminal history points is 120 to 150 months, a supervised release period of two to three years, a fine between $12,500 and $125,000, and a mandatory special assessment of $200. Re-Sentencing Tr. at 8. Contrary to Prellwitz's assertions, the Court sentenced Prellwitz to the lowest possible sentence within the guidelines range and the record is devoid of evidence to support the claim that Prellwitz was sentenced differently because he was unable to pay a fine. Therefore, Prellwitz's claim fails.

## IV. CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds it unlikely that another court would decide the issues raised in this 2255 Motion differently, or that any of the issues raised in Prellwitz's petition would be debatable among

12

reasonable jurists. Therefore, the Court declines to grant a certificate of appealability.

## V. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Prellwitz's Motion to Vacate, Set Aside or Correct a Sentence Pursuant to 28 U.S.C. § 2255 [Docket No. 114] is **DENIED** and a certificate of appealability shall not issue.

BY THE COURT:

s/Ann D. Montgomery
_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 3, 2010